```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/30/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
OLSHAN FROME WOLOSKY LLP,          :
                                  :          20-CV-2415 (RWL)
                Plaintiff,   :
                                  :
         - against -             :         **DECISION AND ORDER:**
                                  :         <u>**MOTIONS TO DISMISS**</u>
PANTHEON ENVIRONMENTAL, LLC a/k/a    :
PANTHEON ENVIRONMENTAL, INC.,       :
ALBERT McLELLAND, GENTRY BEACH,     :
ELIZABETH SCHICK, ERIC SCHICK, AND    :
HOVER ENERGY, LLC,                       :
                                  :
                  Defendants.   :
-------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

       Plaintiff Olshan Frome Wolosky LLP ("Olshan") filed this lawsuit to recover unpaid legal fees. Defendants now move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and, with respect to Hover Energy, LLC ("Hover"), 12(b)(2) for lack of personal jurisdiction. Defendant McLelland additionally seeks payment of ten thousand dollars in attorneys' fees if his motion is granted. For the reasons that follow, the Defendants' motions are DENIED.

### Factual Background[1]

       Olshan is a law firm based in New York City. (Second Amended Complaint ("Compl."), Dkt. 49, ¶ 5.) Pantheon is a Delaware limited liability company, the four individual members of which are Defendants Albert McLelland ("McClelland"), Gentry Beach ("Beach"), and Elizabeth and Eric Schick (the "Schicks"), all of whom reside in

---

[1] The facts are drawn from the Corrected Second Amended Complaint, Dkt. 49, which is the currently operative complaint (the "Complaint").

1

Texas.  (Compl. ¶ 8.)  Hover is a Delaware limited liability company located in Texas.  (Compl. ¶ 13.)  Pantheon owns a controlling interest in Hover, and the two companies share overlapping directors and executives.  (Compl. ¶ 16.)  For example, McLelland was the former Chief Executive Officer ("CEO") of both Pantheon and Hover.  (Compl. ¶ 15.)

In March 2015, Defendants McLelland, Beach, and the Schicks (collectively, the "Individual Defendants"), retained Olshan to provide corporate legal services, including the formation of Pantheon.[2]  (Compl. ¶ 20.)  During the parties' engagement, Olshan performed work not only for Pantheon but also for Hover at McLelland's direction.  (Compl. ¶ 29.)

The Individual Defendants signed Olshan's standard engagement letter (the "Engagement Letter"), which provided that Olshan was to be compensated at the designated attorney rates and for out-of-pocket expenses.  (Compl. ¶ 21.)  The Engagement Letter indicated that the persons responsible for paying Olshan's fees depended on the "reasonable capitalization" of Pantheon.  Specifically, each of the Individual Defendants agreed, in relevant part, that, "Until the reasonable capitalization of Pantheon[,] I shall be responsible for the payment of fees and disbursements incurred in accordance with the terms of this letter of engagement and its accompanying memorandum.  Unless otherwise agreed in writing, each of us is separately, jointly and severally responsible for the full payment of Olshan's invoices."  (Compl. ¶ 24.)  Pantheon (and Hover) were not reasonably capitalized.  (Compl. ¶ 32.)

---

[2] Olshan and/or the Individual Defendants initially contemplated forming Pantheon as a corporation, but ultimately decided to form it as a limited liability company.  (Compl. ¶¶ 22-23.)

2

The Engagement Letter imposed a late charge of one percent per month for failure to pay any statement within thirty days, and provided that the prevailing party in any litigation would receive reasonable attorneys' fees and costs. (Compl. ¶¶ 25-26.)

Olshan regularly billed Defendants for its services. At no time did any of the Defendants dispute or even question the fees and expenses charged, or the quality of Olshan's services. (Compl. ¶ 31.) An amount of $204,239.00 remains due and owing to Olshan for its services to Defendants, including legal work performed for the benefit of Hover. (Compl. ¶ 33.) On or about October 28, 2019, Defendant Erik Schick confirmed, without objection, that Pantheon and its members had received Olshan's statement of account. (Compl. ¶ 34.)

**Procedural History**

Olshan filed its initial complaint on March 9, 2020 (Dkt. 1), and the currently operative Complaint on June 26, 2020 (Dkt. 49). Olshan asserts four causes of action: breach of contract and account stated against all Defendants except Hover, and unjust enrichment and quantum meruit against all Defendants. (Compl. ¶¶ 35-53.) As relief, Olshan seeks $204,239, plus late fees, reasonable attorneys' fees, collection costs, and pre-judgment interest.

Defendant McLelland filed a motion to dismiss on July 7, 2020 (Dkt. 55) ("McLelland Motion"); Pantheon and the Schicks filed a motion to dismiss on July 8, 2020 (Dkt. 57) ("Pantheon Motion"); and Hover, represented by the same firm as Pantheon and the Schicks, filed a motion to dismiss on July 27, 2020 (Dkt. 59) ("Hover Motion").

On August 6, 2020, Olshan filed a memorandum in opposition to McLelland's motion (Dkt. 61) ("Olshan Opp. McLelland"). On August 13, 2020, Olshan filed a separate

memorandum in opposition to the Pantheon motion (Dkt 63) ("Olshan Opp. Pantheon"), and a certification from an Olshan attorney attesting to certain facts and exhibits (Dkt 62). Pantheon and the Schicks filed a reply on August 20, 2020 (Dkt. 65) ("Pantheon Reply"), as did Hover (Dkt. 64) ("Hover Reply").  On October 21, 2020, Defendant Beach, who was not served until September 30, 2020, joined the motion filed by Pantheon and the Schicks.  (Dkt. 75.)

## Legal Standards

All moving Defendants seek dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  Hover additionally moves for dismissal for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

**A.    Motion to Dismiss for Failure to State a Claim**

To survive a Rule 12(b)(6) motion to dismiss a complaint for failure to state a claim upon which relief can be granted, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell-Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'"  *Id.* (*quoting Twombly*, 550 U.S. at 557).

In considering a motion to dismiss for failure to state a cause of action, a district court "accept[s] all factual claims in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor."  *Lotes Co. v. Hon Hai Precision Industry Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (internal quotation marks omitted).  This tenet, however, is

"inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "[R]ather, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, *i.e.*, enough to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotation marks, brackets, and citations omitted). A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

When deciding a motion to dismiss pursuant to Rule 12(b)(6), a court generally is confined to the facts alleged in the complaint. *Cortec Industries v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A court may, however, consider additional materials, including documents attached to the complaint, documents incorporated into the complaint by reference, and public records. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013) (quoting *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). And, if "a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Poindexter v. EMI Record Group Inc.*, No. 11-CV-559, 2012 WL 1027639, at *2 (S.D.N.Y. March 27, 2012) (citing *Barnum v. Millbrook Care Ltd. Partnership*, 850 F. Supp. 1227, 1232-33 (S.D.N.Y. 1994)).

**B.     Motion to Dismiss for Lack of Personal Jurisdiction**

When served with a Rule 12(b)(2) motion to dismiss, "[t]he plaintiff bears the burden of establishing that the court has jurisdiction over the [relevant] defendant[s]." *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001); *see also*

5

*Universal Trading & Investment Co. v. Credit Suisse (Guernsey) Ltd.*, 560 F. App'x 52, 54 (2d Cir. 2014) (summary order) ("Plaintiffs bear the burden of establishing that a court has jurisdiction over a defendant").  To carry that burden, "a plaintiff must make a prima facie showing that jurisdiction exists."  *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (internal quotation marks omitted); *see also Whitaker*, 261 F.3d at 208 ("A plaintiff may carry this burden by pleading in good faith … legally sufficient allegations of jurisdiction, i.e., by making a prima facie showing of jurisdiction" (alteration in original) (internal quotation marks omitted)); *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79 (2d Cir. 1993) ("To survive the motion to dismiss, [plaintiff] was required to make only a prima facie showing that [defendant] is amenable to personal jurisdiction in New York").  "'Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant.'"  *Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 196-97 (S.D.N.Y. 2018) (brackets omitted) (quoting *Charles Schwab Corp. v. Bank of America Corp.*, 883 F.3d 68, 81 (2d Cir. 2018)).

In evaluating whether a plaintiff has surpassed this threshold, the Court may consider the allegations proffered in plaintiff's complaint, along with plaintiff's "own affidavits and supporting materials," construing such materials "in the light most favorable to plaintiffs" and "resolving all doubts in their favor."  *Southern New England Telephone Co. v. Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (internal quotation marks omitted); *Whitaker*, 261 F.3d at 208 ("A plaintiff can make this showing through his own affidavits and supporting materials, containing an averment of facts that, if credited …, would suffice to establish jurisdiction over the defendant.  Where the issue is addressed

on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." (alteration in original) (internal quotation marks, brackets, and citations omitted)); *A.I. Trade Finance, Inc.*, 989 F.2d at 79-80 ("where the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party"). But the Court "need not … accept a legally conclusory assertion or draw 'argumentative inferences.'" *Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d. 736, 757 (S.D.N.Y. 2004); *see also In re SSA Bonds Antitrust Litigation*, 420 F. Supp. 3d 219, 229 (S.D.N.Y. 2019) ("On a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'" (quoting *Twombly*, 550 U.S. at 555)).

## Discussion

The Court will first address Defendants' various Rule 12(b)(6) arguments and then Hover's assertion that the Court lacks personal jurisdiction over it.

**A.     Defendants' Rule 12(b)(6) Arguments Do Not Warrant Dismissal**

Defendants' arguments as to why Olshan fails to state a claim do not stand up to scrutiny.

### 1.     Group Pleading

Defendants argue that the Complaint "lumps the parties together" and fails to state a claim because it does not specify which Defendant owes money for which work. (Pantheon Motion at 3-4; *see also* Hover Motion at 6.) This argument overlooks the Complaint's allegations. Olshan alleges joint and several liability of Pantheon and the four Individual Defendants based on the terms of the Engagement Letter. The Complaint

also clearly alleges that Pantheon and the Individual Defendants all benefitted from Olshan's legal services. Referring to those Defendants collectively is therefore appropriate.

One Defendant, Hover, stands apart as it had no role in the Engagement Letter. The Complaint accounts for this, however: it not only makes certain allegations specific to Hover (*e.g.*, Compl. ¶¶ 28-30), but it also expressly does not include Hover in the claims for breach of contract and account stated. The Complaint does not specify what portion of the $204,239 in fees and costs Olshan attributes to having been performed for Hover as opposed to Pantheon (or both), but those relative amounts, while a subject for discovery, are not determinative of whether Olshan has sufficiently stated its claims.

### 2. Contract vs. Unjust Enrichment

Defendants argue that Olshan cannot have at the same time both a claim for breach of contract and a claim for quantum meruit or unjust enrichment encompassing the same subject matter.[3] (Pantheon Motion at 4-5; *see also* Hover Motion at 7-8; McLellan Motion ¶ 6.) As a legal principle, that is correct. *See, e.g.*, *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005); *Clark–Fitzpatrick, Inc. v. Long Island Rail Road Co.*, 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 656 (1987) ("It is impermissible ... to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the

---

[3] As noted above, Plaintiffs do not assert their breach of contract claim or account stated claim against Hover. (*See* Compl. at 5 (First Cause of Action) and 7 (Fourth Cause of Action)). Accordingly, Defendants' incompatible claim argument applies only to the Individual Defendants and Pantheon.

8

parties").

Courts do allow both types of claims to go forward if the validity or existence of the alleged contract is in question.  *E.g.*, *Gate Technologies, LLC v. Delphix Capital Markets, LLC*, No. 12-CV-7075, 2013 WL 3455484, at *5 (S.D.N.Y. July 9, 2013) ("Plaintiffs' unjust enrichment claims, though not permitted if an express agreement exists, are not precluded where the agreement may not be enforceable" (internal quotation marks and brackets omitted)).  Defendants contend that exception does not apply here because the Complaint does not allege that the Engagement Letter is invalid.  (Pantheon Motion at 4-5.)  But while Defendants assert that "the scope and terms of the Engagement Letter *may* be at issue" (Pantheon Reply at 4), they do not anywhere concede the validity of the Engagement Letter.  Accordingly, it is not at all clear that validity will not be an issue.

At some juncture, either the contract claim or the quantum meruit and unjust enrichment claims may need to be jettisoned with respect to one or more Defendants.  In the meantime, it would be inequitable to strip Olshan of the non-contract claims before conducting discovery about the services rendered, the circumstances under which those services were requested and rendered, and the benefits accruing to Defendants from those services.

### 3. "Reasonably Capitalized"

McLelland, Pantheon, and the Schicks contend that only Pantheon and not the Individual Defendants can be liable because "sheer logic dictates that Pantheon was in fact reasonably capitalized by, at the latest, the end of 2015 because it was in fact formed as a legal entity and it paid all of the fees it owed in 2015 by Olshan's own admission." (McLelland Motion ¶¶ 1.2-1.3.)  Pantheon and the Schicks argue that Olshan's allegation

that Pantheon was not reasonably capitalized is impermissibly conclusory. (Pantheon Motion at 2-3.) The allegation is thin indeed, but nevertheless plausible and likely to turn on information better known to Pantheon than to Olshan. Whether or not Pantheon was reasonably capitalized, and, if so, when, are questions of fact not to be resolved on a motion to dismiss; all the more so because the Engagement Letter does not define the term "reasonable capitalization." In any event, it is an alleged fact that must be accepted as true for purposes of the instant motion.[4]

### 4. Timing of Fees

McLelland asserts that "Paragraph 1 of the Complaint admits that Olshan seeks only unpaid fees from 2016-2018, but the Engagement Letter … was dated March 12, 2015 …. Obviously, all fees owed by Pantheon were paid by Pantheon in 2015." (McLelland Motion ¶ 1.1.) This argument is glib. The Engagement Letter is not limited in time to 2015, and even without the Engagement Letter, Olshan would still have claims for quantum meruit, unjust enrichment, and account stated.

### 5. Representation

McLelland also argues that "The Engagement Letter expressly and unambiguously states that Olshan was not representing any of the individual guarantors, but only Pantheon itself." (McLelland Motion ¶ 1.4.) As neither party has submitted the

---

[4] Defendant McLelland invokes the principle that financial guarantees and surety arrangements are to be strictly construed. (*See* McLelland Motion ¶ 2.) But that principle does not apply here – Olshan alleges, consistent with the Engagement Letter's language quoted in the Complaint – that the Individual Defendants signed not as guarantors or sureties but rather as directly responsible individuals up until such time as Pantheon becomes reasonably capitalized. As no party included a copy of the Engagement Letter with their submissions, the Court has no basis to accept the moving party's alternative characterization of the Individual Defendants' undertaking.

Engagement Letter, the Court cannot accept this assertion. Rather, the Court must accept as true the Complaint's allegation that the Individual Defendants "retained Olshan to provide legal services on a variety of corporate matters." (Compl. ¶ 20.) And even if McLelland's assertion is correct, it would not negate the Engagement Letter's provision by which the Individual Defendants "shall be responsible for the payment of fees and disbursements" for services rendered in connection with Pantheon until it becomes reasonably capitalized. (Compl. ¶ 24.)

      **6.**      **Liability for Hover's Fees**

McLelland further contends that because Hover is not a party to the Engagement Letter, his "limited guarantee" does not extend to fees expended for Hover. (McLelland Motion ¶ 3.) And, McLelland shrugs off the allegation that McLelland directed Olshan to perform legal services for Hover, contending that "Even if that were true, it would not make McLelland's limited Pantheon guarantee from 2015 applicable to any fees allegedly owed by Hover." (McLelland Motion ¶ 3.1.) The Complaint alleges, however, that Pantheon owned and controlled Hover and that McLelland was the CEO of both. Under those circumstances, it is plausible that Pantheon, and thereby the Individual Defendants, could be liable for fees expended in connection with Hover, performed during a time when Pantheon was not reasonably capitalized. Alternatively, to the extent McClelland directed Olshan to perform Hover-related services in his personal capacity, rather than as an officer of either Pantheon or Hover, Olshan's claims for unjust enrichment and quantum meruit would be plausible. Accordingly, the fact that Hover did not sign the Engagement Letter does not merit dismissal of claims against McClellan for Hover-related work.

### 7. Account Stated Claim

Pantheon and the Schicks assert that the Complaint does not sufficiently allege a claim for account stated because Olshan "does not allege that the account was accepted as correct or that any debtor promised to pay the amount stated." (Pantheon Motion at 5.) The premise of that argument simply is not correct. First, the Complaint alleges that Defendants promised to pay the amounts invoiced and stated by Olshan by virtue of having entered into the Engagement Letter. (Compl. ¶¶ 21, 24.) Second, the Complaint alleges that Eric Schick confirmed in writing that Pantheon and its members had received the statement of account and that no Defendant raised any objection to it. (Compl. ¶¶ 31, 34.) It is reasonable to infer, as must be done on a motion to dismiss for failure to state a claim, the Individual Defendants' acceptance from their receipt of, and absence of objection to, the account stated.

### B. Plaintiff Has Demonstrated Personal Jurisdiction Over Hover

Olshan asserts that the Court has specific personal jurisdiction over Hover pursuant to New York's long-arm statute, C.P.L.R. 302(a)(1). "To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015) (internal quotation marks omitted). "A defendant transacts business within the meaning of § 302(a)(1) when it purposefully 'avails itself of the privilege of conducting activities [in New York], thus invoking the benefits and protections of its laws.'" *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 513-14 (S.D.N.Y. 2016) (alteration in original) (quoting *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380, 849 N.Y.S.2d 501, 505 (2007)). And,

to assess whether such is so, "courts must look at the totality of circumstances concerning the party's interactions with, and activities within, the state." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 787 (2d Cir. 1999).

"Section 302(a)(1) is a 'single act' statute," meaning that "proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *HDtracks.com, LLC v. 7digital Group PLC*, No. 18-CV-5823, 2019 WL 6170838, at *5 (S.D.N.Y. Nov. 19, 2019) (internal quotation marks and alteration omitted). For a claim to have a substantial relationship with the transaction(s) justifying long-arm jurisdiction, the connection between the two must be more than "merely coincidental." *Sole Resort, S.A. de C.V. v. Allure Resorts Management, LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (quoting *Johnson v. Ward*, 4 N.Y.3d 516, 520, 797 N.Y.S.2d 33, 35 (2005)); *see also DirecTV Latin America, LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 417-18 ("claim aris[es] from a particular transaction when there is some articulable nexus between the business transacted and the cause of action sued upon or when there is a substantial relationship between the transaction or the claim asserted" (alteration in original) (internal quotation marks omitted)).

In its opposition to Hover's motion to dismiss for lack of personal jurisdiction, Olshan submits the certification of Richard H. Friedman, Olshan's partner who was in charge of Olshan's relationship with Defendants. (Friedman Cert. ¶ 3.[5]) According to Friedman, Olshan "actively represented the defendants in this action from 2015-2018."

---

[5] "Friedman Cert." refers to the Certification of Robert H. Friedman (Dkt. 62).

13

(Friedman Cert. ¶ 3.) The Friedman certification introduces two exhibits related to Hover; one is a legal pleading from a Texas state court action brought by McLelland (the "McLelland Petition") and the other is Hover's limited liability company agreement (the "Hover LLC Agreement"). The Court may consider this evidence in connection with Hover's Rule 12(b)(2) motion.[6] *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163, 165 (2d Cir. 2010); *Whitaker*, 261 F.3d at 208.

Considering the Complaint's allegations, together with the additional information submitted in opposition, Olshan has met its burden to advance a prima facie case of personal jurisdiction over Hover pursuant to C.P.L.R. 302(a)(1). First, Hover has transacted business in New York by retaining Olshan as counsel and availing itself of Olshan's services. Hover hired Olshan to draft Hover's LLC Agreement in 2015. (Friedman Cert. ¶ 9.) And, the Hover LLC Agreement, signed by McLelland for Hover and by Beach for Pantheon, expressly denotes that Olshan will provide "continued representation" of Hover. (Hover LLC Agreement § 14.1.) Olshan served as counsel for Hover (Compl. ¶ 30) and "did in fact perform the requested legal services for Hover" (Compl. ¶ 29). Indeed, in November 2018, Hover referred to Olshan as its "outside corporate counsel." (Friedman Cert., Ex. A at 146.) Second, the retention and use of Olshan's services are directly at issue in Olshan's claims which concern Hover's (and other Defendants') failure to pay for Olshan's services. Accordingly, Olshan has demonstrated that the requirements of New York's long-arm statute, specifically C.P.L.R. 302(a)(1), are satisfied. *See Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 623

---

[6] The Court also takes judicial notice of the Texas state court legal filings. *See, e.g.*, *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of complaint in another action).

(S.D.N.Y. 2014) ("an out of state entity's retention and use of the services of a New York lawyer constitutes transaction of business"); *Kennedy Johnson Gallagher, LLC v. Payne*, No. 10-CV-1363, 2010 WL 3958749, at *2-3 (S.D.N.Y. Oct. 5, 2010) (denying motion to dismiss because defendant "transacted business in New York when he retained [plaintiff law firm] to represent him in an arbitration" that took place in California).

That is not the end of the inquiry.  Once the requirements of the state's long-arm statute are satisfied, a court must also assess "whether personal jurisdiction comports with due process protections established under the Constitution."  *Eades*, 799 F.3d at 168.  There are two steps to making this determination; first, that the defendant has "certain minimum contacts with the relevant forum," and second, "that the exercise of jurisdiction is reasonable in the circumstances."  *Id.* at 168-69 (internal quotation marks omitted).  Exercising jurisdiction over Hover satisfies both prongs.

"Where, as here, specific jurisdiction is asserted, 'minimum contacts necessary to support such jurisdiction exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there.'" *Id.* at 169 (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013)).  Hover availed itself of doing business with a New York law firm to perform services in New York during the relevant time period, and it was reasonably foreseeable that Hover could be "haled into court" in New York if a dispute arose between it and the law firm servicing it.  *See, e.g., Fischbarg v. Doucet*, 38 A.D.3d 270, 275, 832 N.Y.S.2d 164, 168-69 (1st Dep't) (Defendants "projected themselves" into New York, and were thus subject to jurisdiction in New York, by communicating with, sending documents to, and

15

retaining a New York lawyer), *aff'd*, 9 N.Y.3d 375, 849 N.Y.S.2d 501 (2007); *Kaczorowski v. Black & Adams*, 293 A.D.2d 358, 741 N.Y.S.2d 28 (1st Dep't 2002) (same).

As Olshan has established Hover's minimum contacts, it falls upon Hover to "'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Licci*, 732 F.3d at 173 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

These considerations include "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Eades*, 799 F.3d at 169 (quoting *Chloé*, 616 F.3d at 164). "Ultimately, the exercise of personal jurisdiction is reasonable if it 'would comport with fair play and substantial justice.'" *Id.* (quoting *Licci*, 732 F.3d at 170 (quoting *Burger King*, 471 U.S. at 476)).

Exercising personal jurisdiction over Hover again meets the requisite standard. Appearing in New York for litigation will require Hover personnel to appear in New York, but Hover has not presented any basis to conclude that doing so will be particularly burdensome. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 305 F.3d 120, 129-30 (2d Cir.2002) ("Even if forcing the defendant to litigate in a forum relatively distant from its home base were found to be a burden, the argument would provide defendant only weak support, if any, because the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago" (internal quotation marks omitted)). This Court has an interest in

resolving disputes with New York law firms and the parties who deal with them. Trying this case in New York no doubt is more convenient for Olshan. Meanwhile, if Olshan had to pursue litigation against Hover elsewhere, it would be particularly inefficient to have multiple litigations over the same or related subject matter proceeding in two different states. The social policy factor is neutral.

Considering all the relevant factors and circumstances, exercising jurisdiction over Hover comports with fair play and substantial justice and thereby satisfies due process. *See Kennedy Johnson Gallagher, LLC*, 2010 WL 3958749 at *2-3 ("where, as here, the action is brought to obtain payment for services rendered by Plaintiff in the very matter in connection with which Plaintiff was solicited and retained by [Defendant], Plaintiff has sufficiently established that [Defendant] is subject to jurisdiction of New York courts" (internal quotation marks and brackets omitted)); *Flemming, Zulak & Williamson LLP v. Dunbar*, No. 04-CV-421, 2004 WL 2496092, at *2 (S.D.N.Y. Nov. 5, 2004) ("The retention of an attorney in New York also constitutes 'purposeful activity' sufficient to satisfy principles of due process").

In reply, Hover makes several arguments, none of which negate exercise of personal jurisdiction. Hover starts by asserting that it was not required to submit supporting evidence with its motion because the burden of establishing personal jurisdiction lies with Olshan. (Hover Reply at 2.) That is beside the point. As explained above, Olshan has met its burden.

Hover next argues that whether or not Hover and Pantheon are closely related entities has no bearing on whether Hover transacted business in New York. (Hover Reply at 2.) Whether or not that is so, personal jurisdiction over Hover does not depend on its

relationship with Pantheon. As set forth above, there is evidence that Hover directly retained and continued to use the services of Olshan as its outside corporate counsel. That same evidence also obviates Hover's argument that Olshan has not sufficiently asserted facts to show that McLelland acted as Hover's agent in requesting legal services on Hover's behalf. (Hover Reply at 2-3.) In any event, as the non-moving party, Olshan receives the benefit of reasonable inferences, and it is reasonable to infer, based on the Complaint and supplementary evidence, that McLelland was acting as Hover's agent in instructing Olshan even if discovery eventually does not bear that out. *See Flemming, Zulak & Williamson LLP*, 2004 WL 2496092 at *2 ("For the purposes of this motion to dismiss, the Court must accept as true plaintiff's allegations. Although Dowd and Fisher may ultimately show that Kalbian Hagerty did not represent them, or that Kalbian Hagerty acted without their knowledge and consent-and perhaps even against their express direction-in retaining the plaintiff[,] all of this evidence would be properly addressed to the determination on the merits. At this stage, plaintiff has pled facts sufficient to demonstrate that New York is a proper forum." (internal quotation marks, brackets, and citations omitted)).

Hover also quibbles about the number of Defendants in this action who signed the Hover LLC Agreement. (Hover Reply at 3.) That is irrelevant, however, to the fact that that agreement is expressly signed by McLelland on behalf of Hover and Beach on behalf of Pantheon. In its next salvo, Hover asserts that whether Olshan drafted the Hover LLC Agreement in 2015 "is irrelevant to whether Hover transacted business in New York from 2016-2018, the time period for which Olshan seeks fees in this action." (Hover Reply at 3.) This assertion ignores, however, the evidence of Olshan's "continued representation"

of Hover beyond the Hover LLC Agreement and service as outside corporate counsel even as of 2018.  Finally, Hover faults Olshan for failing to allege in the Complaint "what work Olshan allegedly performed for Hover that would subject Hover to this Court's jurisdiction with respect to monies allegedly owed from 2016-2018."  (Hover Reply at 3.)  The Complaint (¶ 30), as well as the additional evidence submitted by Olshan, clearly asserts that Olshan performed legal services for Hover.  The specifics of just what that work entailed is not necessary to the personal jurisdiction determination.

In sum, Olshan has met its burden to establish a prima facie case of personal jurisdiction over Hover.

## Conclusion

For the foregoing reasons, the defendants' motions to dismiss are DENIED.  Defendant McLellan's request to recover $10,000 in attorneys' fees as a sanction is also DENIED.  The Clerk of Court is respectfully directed to close the motions at Dkts. 55, 57, 59, and 75.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:  October 30, 2020
        New York, New York

Copies transmitted to all counsel of record.